UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

RACHEL MANISCALCO, EVELYN ARANCIO, DIANA
SALOMON and CORINNE LYNCH, individually and for
all others similarly,

No.: 21-Civ.-05055 (BMC)

Plaintiffs,

- against -

THE NEW YORK CITY DEPARTMENT OF
EDUCATION, MEISHA PORTER, Schools Chancellor of
the New York City Department of Education, in her official
capacity, THE CITY OF NEW YORK, BILL DE BLASIO,
Mayor of New York City, in his official capacity,
DEPARTMENT OF HEALTH AND MENTAL
HYGIENE, and DAVE CHOKSHI, Commissioner of the
Department of Health and Mental Hygiene, in his official
capacity,

Defendants.

---------------------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**GEORGIA M. PESTANA**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007

*Of Counsel:*

Amanda C. Croushore
Lora Minicucci

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

ARGUMENT .................................................................................................... 5

A.      **PLAINTIFFS CANNOT SHOW IRREPARABLE HARM** ............................ 5

B.      **PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS** ............. 8

   1.      **Plaintiffs Have Not Stated a Substantive Due Process Claim** ........................... 8

   2.      **Plaintiffs Have Not Stated an Equal Protection Claim** ................................... 10

   3.      **Plaintiffs' N.Y. CPLR 7803(3) Claims Fail Because This Court Lacks Subject Matter Jurisdiction over an Article 78 proceeding and, Nevertheless, Because the COH Order has a Rational Basis** ................................ 12

   4.      **The Issues in This Case are Non-Justiciable** ....................................... 14

   5.      **Vaccination Mandates Are Constitutional** ....................................... 16

C.      **THE BALANCE OF EQUITIES DOES NOT TIP IN FAVOR OF PLAINTIFFS** ................................................................................ 17

D.      **AN INJUNCTION IS NOT IN THE PUBLIC INTEREST** .......................... 19

# TABLE OF AUTHORITIES

**Cases**

ABM Indus. Grps., LLC v. Int'l Union, Local 30, 30A, 30B, 968 F.3d 158 (2d Cir. 2020) ........ 10

Abrams v. New York City Trans. Auth., 39 N.Y.2d 990 (1976)................................................. 15

Almontaser v. N.Y. City Dep't of Educ., 519 F.3d 505 (2d Cir. 2008) ........................................ 5

Amoco Production Co., 480 U.S. 531 (1987) ............................................................................... 18

Analytical Diagnostic Lab, Inc. v. Kusel, 626 F.3d 135 (2d Cir. 2010)...................................... 11

Arrocha v. Bd. of Educ., 93 N.Y.2d 361 (1999)......................................................................... 14

Board of Education of the City School District of the City of New York and the United
    Federation of Teachers, Local 2, AFT, AFL-CIO ................................................................ 4

Brown & Williamson Tobacco Corp. v. Engman, 527 F.2d 1115 (2d Cir. 1975)....................... 20

Cartagena v. City of N.Y., 257 F. Supp. 2d 708 (S.D.N.Y. 2003) ............................................. 13

Civil Serv. Emps. Ass'n v. Cty. of Erie, 43 A.D.3d 1341 (4th Dep't 2007) .............................. 16

Coastal Communs. Serv. v. City of N.Y., 658 F. Supp. 2d 425 (E.D.N.Y. 2009)...................... 13

Conyers v. Rossides, 558 F.3d 137 (2d Cir. 2009).................................................................. 11, 12

County of Sacramento v. Lewis, 523 U.S. 833 (1998)................................................................... 8

Dexter 345 Inc. v. Cuomo, 663 F.3d 59 (2d Cir. 2011).................................................................. 5

Engquist v. Oregon Dep't of Agric., 553 U.S. 591 (2008).................................................... 11, 12

Fairport v. Newman, 90 A.D.2d 293 (4th Dep't 1982)................................................................ 10

Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110 (2d Cir. 2009) .............................. 5

Ferran v. Town of Nassau, 471 F.3d 363 (2d. Cir. 2006)............................................................. 8

Finn v. Anderson, 592 F. App'x 16 (2d Cir 2014) ........................................................................ 8

Fitzgerald v. Berman, No. 02-CV-926 (NAM) (RFT), 2003 U.S. Dist. LEXIS 27156 (N.D.N.Y.
    Sep. 30, 2003) ....................................................................................................................... 7

Friend of P.S 163, Inc. v. Jewish Home Lifecare, Manhattan, 146 A.D.3d 576 (1st Dep't 2017) 14

Graci v. Ponte, 147 A.D.3d 412 (1st Dep't 2017) ...................................................................... 14

Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877 (2d Cir. 1996) 10

Henderson v. New York, 423 F. Supp. 2d 129 (S.D.N.Y. 2006) ................................................ 10

Impax Media Inc. v. Northeast Adver. Corp., No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940
    (S.D.N.Y. Jan. 10, 2018)....................................................................................................... 5

Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11 (1905) .......................................... 17

Johnston v. Tn. of Orangetown, 562 F. App'x 39 (2d Cir. 2014)............................................... 10

Jones v. Beame, 45 N.Y.2d 402 (1978) ...................................................................................... 17

Klostermann v. Cuomo, 61 N.Y.2d 525 (1984)........................................................................... 15

Koehler v. New York City, Docket No. 04 Civ. 6929, 2005 U.S. Dist. LEXIS 8901 (S.D.N.Y.
    2005) .................................................................................................................................... 10

Kravitz v. Twentieth Century-Fox Film Corp., 5 Misc. 2d 368 (Sup. Ct. N.Y. Cty. 1957) ......... 10

Locurto v. Safir, 264 F.3d 154 (2d Cir. 2001) ............................................................................ 10

Marino v. Town of Branford, No. 17-CV-1828 (MPS), 2018 U.S. Dist. LEXIS 17285 (D. Conn.
    Feb. 2, 2018) ........................................................................................................................ 17

Massi v. Flynn, 353 Fed. Appx. 658 (2d Cir. 2009) ................................................................... 11

Mid-State Mgmt. Corp. v. New York City Conciliation and Appeals Bd., 112 A.D.2d 72 (1st
    Dep't 1985) ..................................................................................................................... 13, 14

Neilson v. D'Angelis, 409 F.3d 100 (2d Cir. 2005)..................................................................... 12

New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82 v. Cuomo, 64 N.Y.2d 233 (1984) ............................................................................... 15, 16, 17

Parsons v. Pond, 126 F. Supp. 2d 205 (D. Conn. 2000) ................................................ 9

Peckham v. Calogero, 12 N.Y.3d 424 (2009) ............................................................. 14

Pell v. Bd. of Educ., 34 N.Y.2d 222 (1974) ............................................................... 13

Phillips v. City of N.Y., 775 F.3d 538 (2d Cir. 2015) ................................................. 17

Porr v. Daman, 299 Fed. Appx. 84 (2d Cir. 2008) ...................................................... 11

Pupiales v. Bldg. Mgmt. Co., Inc., No. 158098/2012, 2014 N.Y. Misc. LEXIS 289 (Sup. Ct. N.Y. Cty. Jan. 22, 2014) .............................................................................. 10

Roberts v. Bd. of Educ., 113029/11, 2012 N.Y. Misc. LEXIS 1717 (Sup. Ct. N.Y. Cty. Apr. 11, 2012) .................................................................................................. 16

Roberts v. Health & Hosps. Corp., 87 A.D.3d 311 (1st Dep't 2011) .......................... 16

Rodriguez v. Margotta, 71 F. Supp. 2d 289 (S.D.N.Y. 1999) ...................................... 9

Roman Catholic Diocese v. Cuomo, 141 S. Ct. 63 (2020) .......................................... 20

Ryan v. Carroll, 67 F. Supp. 2d 356 (S.D.N.Y. 1999) ................................................ 10

Schacht v. City of New York, 39 N.Y.2d 28 (1979) .................................................... 10

Schultz v. Inc. Vil. of Bellport, No. 08-CV-0930 (JFB) (ETB), 2010 U.S. Dist. LEXIS 104804 (E.D.N.Y. Sep. 30, 2010) ............................................................................ 9

Score, Inc. v. Cap Cities/ABC, Inc., 724 F. Supp. 194 (S.D.N.Y. 1989) ..................... 5

Segal v. City of New York, 459 F.3d 207 (2006) ........................................................ 10

Staskowski v. Cty. of Nassau, 410 F. App'x 420 (2d Cir. 2011) ................................ 11

Stork Rest., Inc. v. Boland, 282 N.Y. 256 (1940) ...................................................... 14

Sullivan Cty. Harness Racing Ass'n v. Glasser, 30 N.Y.2d 269 (1972) ..................... 15

Sutton v. Stony Brook Univ., No. 18-CV-7434 (JS) (ARL), 2021 U.S. Dist. LEXIS 156083 (E.D.N.Y. Aug. 18, 2021) ...................................................................................... 9

Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999) ................................................. 8

Tom Doherty Assoc. v. Saban Entm't, Inc., 60 F.3d 27 (2d Cir. 1995) ....................... 6

Toys R Us v. Silva, 89 N.Y.2d 411 (1996) ................................................................. 14

Trump v. Deutsche Bank AG, 943 F.3d 627 (2d Cir. 2019) .................................. 18, 20

V.D. v. New York, 403 F. Supp. 3d 76 (E.D.N.Y. 2019) ............................................ 17

Vanderbilt Museum v.. American Assoc. of Museums, 113 Misc. 2d 502, 449 N.Y.S.2d 399 (S. Ct. Suffolk Co. 1982) .......................................................................................... 13

Walker v. Franco, 275 A.D.2d 627 (1st Dep't 2000) .................................................. 14

Ward v. City of Long Beach, 20 N.Y.3d 1042 (2013) ................................................. 13

Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982) ................................................ 18

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008) ...................................... 5

Winter v. NRDC, Inc., 555 U.S. 7 (2008) .................................................................. 18

**Other Authorities**

N.Y. C.P.L.R. 7803(3) .............................................................................................. 13

N.Y. C.P.L.R. 7804 .................................................................................................. 13

# PRELIMINARY STATEMENT

On August 24, 2021—the day after the U.S. Food and Drug Administration ("FDA") fully approved the Pfizer COVID-19 vaccine—the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), David A. Chokshi, issued a Commissioner's Order ("COH Order") requiring all New York City Department of Education ("DOE") employees to show proof of at least one dose of vaccination against COVID-19 by September 27, 2021 (the "DOE Vaccination Mandate").[1] The COH Order's preliminary paragraphs provide a salient and unassailable predicate for making the mandate, including that the U.S. Centers for Disease Control and Prevention ("CDC") extols vaccination as the primary strategy to stop the spread of COVID-19 and thus recommends teachers be vaccinated as soon as possible to help schools safely resume full operations. Further, and to that end, DOE is the largest school district in the country, with around one million students, hundreds of thousands of whom are not yet able or eligible to be vaccinated. Thus, the DOE Vaccination Mandate is fully premised on potentially saving lives, protecting public health, and promoting public safety.

Plaintiffs are two New York City public school teachers and two New York City public school paraprofessionals who seek to represent themselves and a class of other public school staff who oppose the DOE Vaccination Mandate.[2] Plaintiffs claim that requiring otherwise unwilling teachers and paraprofessionals to receive a COVID-19 vaccine interferes with their substantive due process rights under the Fourteenth Amendment of the United States

---

[1] See Declaration of Lora Minicucci ("Minicucci Decl."), Exh. A. This Order was rescinded and restated in a subsequent Commissioner's Order, dated September 15, 2021, which, as to the DOE Vaccination Mandate, is analogous to its predecessor. See id., Exh. B, also available at: https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf last visited on September 16, 2021.

[2] A copy of plaintiff's Motion for an Order to Show Cause for Temporary Restraining Order and for a Preliminary Injunction can be found at Dkt. No. 2.

Constitution; violates the equal protection clause under the Fourteenth Amendment of the United States Constitution; and, under Article 78 of the New York Civil Practice Law and Rules, was made in violation of lawful procedure, was affected by error of law, or was arbitrary or capricious or an abuse of discretion. Plaintiffs now seek a preliminary injunction that would prohibit defendants from enforcing the DOE Vaccination Mandate, allowing them, and all other unvaccinated DOE teachers and paraprofessionals, to have direct, repeated and lengthy contact, within a school setting, with students who are themselves unable or ineligible to be vaccinated.

Plaintiffs meet none of the requirements for a preliminary injunction. They cannot establish that any alleged harm they may suffer, absent the requested relief, is irreparable. Nor can plaintiffs demonstrate any likelihood of success on the merits of their claims or that the balance of equities tips in their favor. Most plainly too, plaintiffs cannot show that acting to enjoin a vaccination requirement for school staff would be in the public interest. The COH Order itself makes this entirely clear. This mandate is founded on public health officials' expertise, sound science and studies, and, with millions now fully vaccinated, abundant empirical data proving efficacy and safety. Plaintiffs' application for a preliminary injunction must be denied in its entirety.

## STATEMENT OF FACTS

### COVID-19 Pandemic and Impact on Schools and School-Aged Children

On March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98, declaring a state of emergency in the City of New York ("the City") to address the threat posed by COVID-19 to the health and welfare of City residents, and this order remains in effect today. See Minicucci Decl., Exh. B at p. 1. Thereafter, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and

welfare of City residents, and recently declared that the public health emergency continues to be in effect.  Id.

Indeed, the CDC now reports that new variants of COVID-19, identified as "variants of concern," have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants.  See id.  In light of this, the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations"  and is "the leading public health prevention strategy to end the COVID-19 pandemic."  Id.

Critically, considering that aim, the DOE serves approximately one million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated.  See Minicucci Decl., Exh. B, at p. 2.  Given this, and the CDC's judgment, DOHMH has determined that a system of vaccination for individuals working in school settings or other DOE buildings will potentially save lives, protect public health, and promote public safety. Id.

On August 23, 2021, Mayor de Blasio and the New York City Commissioner of Health and Mental Hygiene, David A. Chokshi, announced that workforces in DOE buildings would be subject to a "vaccine only" mandate, as described thereafter in the COH Order.  See Minicucci Decl. Exhs. A and B.  Under this policy, by September 27, 2021, DOE employees must submit proof that they are fully vaccinated, or have received a single dose vaccine or the second dose of a two-dose vaccine, or received the first dose of a two-dose vaccine, with the additional requirement to provide proof of the second dose thereafter.  Id.

**September 10, 2021 Impact Arbitration Decision**

On September 1, 2021, the United Federation of Teachers filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the COH Order. See Minicucci Decl., Exh. C (September 10, 2021 Arbitration Award Decision in *Board of Education of the City School District of the City of New York and the United Federation of Teachers, Local 2, AFT, AFL-CIO* (hereafter "Impact Arbitration Decision"), at 4. PERB appointed an arbitrator and several days of discussions were held. Id. On September 10, 2021, the arbitrator issued a decision, which establishes a process for exemptions, accommodation requests, and the appeals process for teachers subject to the DOE Vaccination Mandate. Id. at 6-13.

The process established by the Impact Arbitration Decision applies to medical and religious exemptions as well as accommodations for those who, having received a full course of vaccination, remain unable to mount an immune response. See Minicucci Decl., Exh. C at 6-13. It also sets forth that employees who have not requested an exemption, or whose request was denied, may be placed on leave without pay by the DOE starting September 28, 2021. See id. at 13. While on leave without pay, employees will continue to be eligible for health insurance and will be prohibited from engaging in gainful employment. Id. at 15. An employee who submits proof of vaccination before November 30, 2021, will be eligible to return to their school within a week of submitting their documentation to the DOE. Id. at 14.

The decision also sets forth a process for separation from employment or extension of leave without pay. See Minicucci Decl., Exh. C at 14. DOE employees covered by the Impact Arbitration Decision who have not complied with the DOE Vaccination Mandate by October 29, 2021, can opt to be separated from employment and continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source. Id. at 16. The employee can also opt to have his or her leave without pay

extended to September 5, 2022, and maintain health coverage.  Id. at 17. To the extent that those employees who have chosen to extend their leave without pay do not comply with the DOE Vaccination Mandate by the end of the period, they will be deemed to have voluntarily resigned. Id.  On December 1, 2021, DOE will unilaterally separate employees who remain out of compliance with the DOE Vaccination Mandate and have not applied for either the extended leave or separation.  Id.  DOE will pursue separation of those employees pursuant to the governing collective bargaining agreements. Id.

## ARGUMENT

In order to justify a preliminary injunction, plaintiffs must demonstrate: 1) irreparable harm absent injunctive relief; 2) a likelihood of success on the merits; 3) the balance of equities tips decidedly in their favor; and 4) that the public interest weighs in favor of granting an injunction.  See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24-25 (2008); Almontaser v. N.Y. City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008).   An injunction is unwarranted because plaintiffs cannot demonstrate any of these requirements.

### A.    PLAINTIFFS CANNOT SHOW IRREPARABLE HARM

"[I]rreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.'"  Impax Media Inc. v. Northeast Adver. Corp., No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 at *10 (S.D.N.Y. Jan. 10, 2018) (quoting Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009).   In making a showing of irreparable harm, plaintiffs must demonstrate that there is a threat of actual injury for which available legal remedies are inadequate. See Score, Inc. v. Cap Cities/ABC, Inc., 724 F. Supp. 194, 198 (S.D.N.Y. 1989).   In addition, an irreparable injury is one "for which a monetary award cannot be adequate compensation."  Dexter 345 Inc. v. Cuomo, 663 F.3d 59, 63 (2d Cir. 2011).

Plaintiffs briefly identify four potential "irreparable harms" allegedly flowing from the DOE Vaccination Mandate: that teachers are at risk of "losing their livelihoods," losing their "health insurance," losing their "seniority," and losing their "ability to pursue their profession." Pl. MOL, Dkt. 2.1, pp. 1, 3. None of these supposed "harms" exists, nor are they irreparable or otherwise sufficient to justify a preliminary injunction.

First, these alleged, theoretical harms are purely speculative and therefore cannot support a motion for a preliminary injunction. See e.g., Tom Doherty Assoc. v. Saban Entm't, Inc., 60 F.3d 27, 29 (2d Cir. 1995) ("Irreparable harm is an injury that is not remote or speculative but actual and imminent."). In her unsigned Declaration in support of the motion, plaintiff Rachel Maniscalco declares that she has not received the COVID-19 vaccine because she is "concerned for [her] health, as well as the health of [her] future children, given the newness of the vaccine, which does not have years of data to support its safety," and contends that she "understand[s] [the COVID-19 vaccine] to be a different kind of vaccine, using mRNA rather than actual virus particles as used in a typical, established vaccine." Maniscalco Declaration at ¶ 6. It is plain from these statements that Maniscalco has identified no actual likely harm to herself or to anyone else resulting from the DOE Vaccination Mandate; instead, she points only to untethered speculation that an FDA-approved vaccine is potentially unsafe to her or to any future children she may have. This conjecture further runs contrary to established science and study, with the three COVID-19 vaccines authorized for the public in the United States having been proven to be safe and highly effective. Minicucci Decl., Exh. B at 1. Likewise, the newly added named plaintiffs, Evelyn Arancio, Diana Salomon and Corring Lynch, each allege that they have "developed antibodies following exposure to a Covid-19 infection," Am. Compl. ¶¶ 21-23, apparently suggesting—despite scientifically tested evidence

to the contrary[3]—that they are therefore protected from the virus, and would not be at risk of spreading it to school children. Again, plaintiffs are attempting to replace scientific fact with personal conjecture. This cannot support a preliminary injunction that would place one million school children, and their families, at otherwise ameliorated, if not avoidable, personal risk.

Moreover, plaintiffs have not alleged whether they, or any of the other unnamed individuals they purport to represent, intend to seek an exemption from the vaccination requirement. The attorney declaration of Louis Gelormino ("Gelormino Declaration") obliquely states that the DOE Vaccination Mandate "does not include medical or religious exceptions to the vaccine mandate, even though the Centers for Disease Control and Prevention has warned that no one with a serious allergic reaction to components in the Covid-19 vaccines should take the vaccine." Gelormino Decl., Dkt. 2.3, ¶ 23. There are two problems with this.

First, Mr. Gelormino's assertion is incorrect. The COH Order, as amended, states, "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law." Minicucci Decl., Exh. B, at ¶ 6. The Impact Arbitration Decision dated September 10, 2021, establishes a comprehensive process for exemptions, accommodation requests, and appeals. See Minicucci Decl. Exh. C at 6-13. The decision affirmatively states that accommodations will be granted to individuals who have a documented contraindication, recognized by the CDC, such that the employee cannot receive any of the three authorized vaccines. See Minicucci Decl. Exh. C at p. 7. Moreover, the decision also provides for temporary medical exemptions and religious exemptions. Id. at p. 9.

---

[3] See Minicucci Decl. Exh. G, *CDC – Frequently Asked Questions About the Covid-19 Vaccine*, also available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html ("you should be vaccinated regardless of whether you already had COVID-19"), last visited on September 15, 2021.

Second, plaintiffs do not appear to have standing to raise this particular issue, as nowhere in the Amended Complaint or the Maniscalco Declaration do plaintiffs present any medical or religious reason for declining vaccination. See Fitzgerald v. Berman, No. 02-CV-926 (NAM) (RFT), 2003 U.S. Dist. LEXIS 27156, at *20 (N.D.N.Y. Sep. 30, 2003) ("To establish standing, a federal complainant must show injury, causation, and redressability"; the court thus denied an application for a preliminary injunction where plaintiffs lacked standing to bring their claims.) (citations omitted). As a result, it cannot be plausibly contended, nor preliminarily determined, that plaintiffs, or the putative class they seek to represent, will in fact be obligated to return to the classroom upon demonstrating a legitimate and substantiated exemption to vaccination recognized under the Impact Arbitration Decision.

Under these circumstances, plaintiffs have failed to demonstrate that they are likely to suffer irrevocable harm upon compliance with the DOE Vaccination Mandate. Accordingly, their motion for a preliminary injunction fails for this reason alone.

## B. PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

### 1. Plaintiffs Have Not Stated a Substantive Due Process Claim

"To state a substantive due process claim, a plaintiff must plead that (1) 'a constitutionally cognizable property interest is at stake,' and (2) the defendant's alleged actions depriving her of that right were 'not merely incorrect or ill-advised,' but 'arbitrary, conscience-shocking, or oppressive in the constitutional sense.'" Finn v. Anderson, 592 F. App'x 16, 20 (2d Cir. 2014) (summary order) (quoting Ferran v. Town of Nassau, 471 F.3d 363, 369-70 (2d Cir. 2006)). Plaintiffs here can make neither showing. Indeed, their substantive due process claim is deficient on its face and should be dismissed by this Court on a Rule 12 motion.

Plaintiffs claim a violation of their substantive due process rights. To succeed on this claim, they must meet an extremely high standard. In particular, "substantive due-process

rights guard against the government's 'exercise of power ***without any reasonable justification*** in the service of a legitimate governmental objective.'" <u>Tenenbaum v. Williams</u>, 193 F.3d 581, 600 (2d Cir. 1999) (quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998)) (emphasis added). As a result, "'only the most egregious official conduct can be said to be arbitrary in the constitutional sense' and therefore unconstitutional.'" <u>Id</u>. Plaintiffs cannot meet this standard here.

Plaintiffs contend that the property interest at stake is their "right to pursue a profession," Pls. MOL Dkt 2.1, p. 2. but "a substantive due process claim based on infringement of this or similar rights will succeed only where a person is ***blocked*** from participating in a particular field." <u>Schultz v. Inc. Vil. of Bellport</u>, No. 08-CV-0930 (JFB) (ETB), 2010 U.S. Dist. LEXIS 104804, at *24 (E.D.N.Y. Sep. 30, 2010) (citations omitted) (emphasis added). <u>See</u> <u>also</u> <u>Rodriguez v. Margotta</u>, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999) ("It is well settled that one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest."). Plaintiffs do not contend that they are prohibited from teaching or working as a paraprofessional as a result of the DOE Vaccination Mandate. Instead, they contend that they may be prohibited from working for the New York City Department of Education. Nothing in the DOE Vaccination Mandate would prohibit plaintiffs from working for a private school or other school district that does not presently require vaccination. <u>See</u> <u>Parsons v. Pond</u>, 126 F. Supp. 2d 205, 207 (D. Conn. 2000) ("[T]he Due Process Clause secures the liberty to pursue a calling or occupation, and not the right to a specific job.") (internal quotation marks and citations omitted). <u>See</u> <u>also</u> <u>Sutton v. Stony Brook Univ.</u>, No. 18-CV-7434 (JS) (ARL), 2021 U.S. Dist. LEXIS 156083, at *37-38 (E.D.N.Y. Aug. 18, 2021) (dismissing substantive due process claim brought by a student teacher who was removed from her position because plaintiff could have taken certain steps that would have allowed her to continue teaching, but declined, and because

there were "no allegations that Defendants prevented [plaintiff] from pursuing her chosen profession elsewhere").

Further, union members are bound by the acts and choices of their union, which is their sole representative in collective bargaining. See ABM Indus. Grps., LLC v. Int'l Union, Local 30, 30A, 30B, 968 F.3d 158 (2d Cir. 2020); Schacht v. City of New York, 39 N.Y.2d 28, 32 (1979) ("Plaintiff, having designated the union to be her agent for collective bargaining purposes, is bound by agreements made by that union or her behalf.") (emphasis added). "The union is free to waive any right of its members to certain benefits in exchange for other considerations . . . ." Fairport v. Newman, 90 A.D.2d 293, 296 (4th Dep't 1982) (citing Schacht, 39 N.Y.2d 28). A union member does not have the right to "reject certain acts of her bargaining representative and accept others." Pupiales v. Bldg. Mgmt. Co., No. 158098/2012, 2014 N.Y. Misc. LEXIS 289, at *15 (Sup. Ct. N.Y. Cty. Jan. 22, 2014) (citing Schacht, 39 N.Y.2d 28); Kravitz v. Twentieth Century-Fox Film Corp., 5 Misc. 2d 368, 372 (Sup. Ct. N.Y. Cty. 1957) ("The law is well settled that employees who designate a labor union as their representative for collective bargaining purposes are bound by all acts of that organization taken after proper voting and the individual employee is not free to accept such decisions and acts as please him and reject all others.") (citation omitted). Here, teachers and paraprofessionals like plaintiffs who decline to be vaccinated are afforded the framework set forth in the Impact Arbitration Decision.

Thus, plaintiffs' due process claims fail because they have not claimed a liberty interest is at stake.

### 2. Plaintiffs Have Not Stated an Equal Protection Claim

For their Fourteenth Amendment equal protection claim, plaintiffs allege that they are treated differently than similarly situated City employees when applying the COH Order because the COH Order allows non-DOE employees to opt out of the vaccine mandate through

weekly COVID-19 testing.  See Am. Compl., Dkt. 8 ¶¶ 53-53.  This sort of equal protection claim is not only without merit but has specifically been rejected by the Supreme Court.  In the context of constitutional claims arising from public employment, plaintiffs are required to demonstrate that any alleged treatment that is different from other similarly situated employees was based on membership in a specific class that has been granted legal protection.  See Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 605 (2008); see also Analytical Diagnostic Lab, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) ("The Supreme Court's decision in Engquist ... eliminated class-of-one claims for government employees."); Staskowski v. Cty. of Nassau, 410 F. App'x 420 (2d Cir. 2011) (summary order); Conyers v. Rossides, 558 F.3d 137, 151–52 (2d Cir. 2009); Massi v. Flynn, 353 Fed. Appx. 658, 660 (2d Cir. 2009) (summary order); Porr v. Daman, 299 Fed. Appx. 84, 86 (2d Cir. 2008).

In reading this requirement into the equal protection clause, the Supreme Court specifically ruled out equal protection claims challenging different applications of discretion to different employees because permitting such would serve to constitutionalize all decisions by a public employer concerning its employees:

> [If] plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim.

Engquist, 553 U.S. 607-608.  Plaintiffs here are attempting to do *precisely* what the Supreme Court said they cannot.  They are attempting to constitutionalize the discretionary decisions of the executive branch.  Because plaintiffs do "not allege [that they were] discriminated against on the basis of race, sex, national origin, or other protected classification," their equal protection claims must be dismissed.  Conyers, 558 F.3d at 152.

Even if plaintiffs could proceed with an equal protection claim in the absence of identifying a legally protected class, their claim would nonetheless fail because the City has articulated a rational and non-discriminatory basis for treating plaintiffs differently than other similarly-situated City employees. Unlike non-DOE City employees, inarguably, DOE employees maintain close indoor contact with children, in congregate settings, and many of those children are presently ineligible or unable themselves to get vaccinated. Moreover, it is improper to compare plaintiffs to City employees who do not work in the DOE because of categorical differences that exist between the positions. Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (explaining that to satisfy the "similarly situated" element of an equal protection claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high").

Accordingly, plaintiffs' equal protection claim will not survive a Rule 12 motion and therefore cannot satisfy the requirement at this stage of likelihood of success on the merits.

### 3. Plaintiffs' N.Y. CPLR 7803(3) Claims Fail Because This Court Lacks Subject Matter Jurisdiction over an Article 78 proceeding and, Nevertheless, Because the COH Order has a Rational Basis

Plaintiffs' Amended Complaint alleges that the COH order was made "in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" under N.Y. C.P.L.R. 7803(3).[4]

Administrative action is arbitrary when it is taken "without sound basis in reason" and "without regard to the facts." Pell v. Bd. of Educ., 34 N.Y.2d 222, 231 (1974); see Ward v. City of Long Beach, 20 N.Y.3d 1042, 1043 (2013). "[T]he Court may not upset the agency's

---

[4] As an initial matter, New York Courts and the Eastern District have held that this court lacks subject matter jurisdiction to hear the Article 78 claim. Cartagena v. City of N.Y., 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003); Vanderbilt Museum v. American Assoc. of Museums, 113 Misc. 2d 502, 449 N.Y.S.2d 399, 403 (S. Ct. Suffolk Co. 1982); Coastal Communs. Serv. v. City of N.Y., 658 F. Supp. 2d 425, 459 (E.D.N.Y. 2009).

determination in the absence of a finding…that the determination had no rational basis." <u>Mid-State Mgmt. Corp. v. New York City Conciliation and Appeals Bd.</u>, 112 A.D.2d 72, 76 (1st Dep't 1985), <u>affirmed</u> 66 N.Y.2d 1032 (1985). Here, the New York City Commissioner of Health determined that, in order to prevent the spread of COVID-19 in schools, all school staff must be vaccinated.

Even if the Court would have acted differently in the Commissioner's position, it may not substitute its judgment for that of the government. <u>See, e.g.</u>, <u>Peckham v. Calogero</u>, 12 N.Y.3d 424, 431 (2009) ("[E]ven if the court concludes that it would have reached a different result than the one reached by the agency," the court "must sustain the determination," provided that it is "supported by a rational basis."); <u>Arrocha v. Bd. of Educ.</u>, 93 N.Y.2d 361, 363 (1999) ("[I]t is well-settled that a court may not substitute its judgment for that of the board or body it reviews <u>unless</u> the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion.") (emphasis in original) (internal quotation marks omitted); <u>Mid-State Mgmt. Corp.</u>, 112 A.D.2d at 76. "The decision need not be the best which could have been made and need not be free from flaws—it must only have a rational basis." <u>Walker v. Franco</u>, 275 A.D.2d 627, 628 (1st Dep't 2000).

Consequently, the Court may not weigh the evidence on which the Commissioner relied against evidence submitted by plaintiffs, for "the duty of weighing the evidence and making the choice rests solely upon the [administrative agency]. The courts may not weigh the evidence or reject the choice made by [such agency] where the evidence is conflicting and room for choice exists." <u>Toys R Us v. Silva</u>, 89 N.Y.2d 411, 424 (1996), <u>citing</u> <u>Stork Rest, Inc. v. Boland</u>, 282 N.Y. 256, 267 (1940); <u>Friend of P.S 163, Inc. v. Jewish Home Lifecare, Manhattan</u>, 146 A.D.3d 576, 578 (1st Dep't 2017) ("The choice between conflicting expert testimony rests in the discretion of the administrative agency.") (citations omitted); <u>Graci v. Ponte</u>, 147 A.D.3d

412, 413 (1st Dep't 2017) (DOE is "entitled to rely on the findings of their own medical personnel even if those findings are contrary to those of professionals retained by the [employee].") (internal quotations and citations omitted). And, even so, plaintiffs provide no reputable evidence to support their inexpert contentions criticizing vaccination or the inferred assertion that a prior COVID-19 infection negates any need for vaccination.

Accordingly, as long as a rational basis exists, as it plainly does here, to support this administrative determination, it cannot be said that the determination was irrational, and the Court's inquiry ends. See, e.g., Sullivan Cty. Harness Racing Ass'n v. Glasser, 30 N.Y.2d 269, 277 (1972) ("The judicial function is exhausted when there is to be found a rational basis for the conclusions approved by the administrative body.").

Accordingly, plaintiffs' N.Y. CPLR 7803(3) claim likewise fails.

### 4. The Issues in This Case are Non-Justiciable

In this action, plaintiffs request that this Court infringe on the DOE's authority to manage its schools and the Health Commissioner's authority to protect public health, and substitute plaintiffs' own judgment for that of the DOE Chancellor, the Health Commissioner, and the Mayor. To do so would be a blatant violation of the separation of powers. See New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82 v. Cuomo, 64 N.Y.2d 233, 237-40 (1984) ("Cuomo") (rejecting Article 78 challenge and motion for preliminary injunction relating to the safety of Correctional facilities as nonjusticiable and violative of separation of powers principles, holding that "the manner by which the State addresses complex societal and governmental issues is a subject left to the discretion of the political branches of government" (citing Klostermann v. Cuomo, 61 N.Y.2d 525 (1984) and Abrams v. New York City Trans. Auth., 39 N.Y.2d 990 (1976))). Indeed, in Cuomo, the New York State Court of Appeals specifically rejected an Article 78 Petition premised on purported safety concerns in the

workplace: "By seeking to vindicate their legally protected interest in a safe workplace, petitioners call for a remedy which would embroil the judiciary in the management and operation of the State correctional system." Cuomo, 64 N.Y.2d at 239.

The New York State Court of Appeals' decision in Cuomo has been repeatedly cited with approval to bar challenges as nonjusticiable where the challenged agency determinations are about safety and health. See, e.g., Roberts v. Health & Hosps. Corp., 87 A.D.3d 311, 325-26 (1st Dep't 2011); Civil Serv. Emps. Ass'n v. Cty. of Erie, 43 A.D.3d 1341, 1341-42 (4th Dep't 2007) (reversing Supreme Court's granting of Article 78 petition and permanent injunction on justiciability grounds where petitioners argued that agency staffing determination would pose a "severe exacerbation of the danger to the safety and health of the remaining staff").

The decision of the New York State Appellate Division, First Department, in Roberts is particularly instructive. In Roberts, petitioners brought an Article 78 proceeding challenging a City agency's staffing determinations on the ground that the safety of the employees had been put at risk because "HHC did not develop an adequate health and safety plan." 87 A.D.3d at 317. The lower court granted an injunction, and the City appealed. Id. The First Department unanimously reversed Supreme Court's judgment, holding that

> Petitioners' claims that HHC's decision to reduce maintenance staff would result in the creation of an unsafe workplace do not salvage their petitions. In addition to being far too speculative to rise to the level of an injury in fact, those claims clearly present a nonjusticiable controversy. [citing Cuomo, 64 N.Y.2d at 237].
>
> **Neither the petitioners nor the courts should be permitted to substitute their judgment for the discretionary management of public business by public officials, as neither have been lawfully charged with that responsibility**.

Id. at 325-26 (emphasis added).

Here, plaintiffs patently seek to embroil the judiciary in the management of the executive branch of government concerning subjects entrusted to that branch, the safety of school students and staff. Here, as in <u>Roberts</u>, those claims are not justiciable.

Further, the doctrine of justiciability has been specifically applied to bar challenges to the manner in which DOE schools are staffed. <u>See</u> <u>Roberts v. Bd. of Educ.</u>, 113029/11, 2012 N.Y. Misc. LEXIS 1717, at *7 (Sup. Ct. N.Y. Cty. Apr. 11, 2012) ("As a policy matter, courts will not interfere in areas that it is ill-equipped to undertake and where another branch of government is more suited to the task. . . . Decisions concerning the allocation of scarce school resources and school staffing levels are left to the discretion and sound judgment of school administrators.") (citing <u>Jones v. Beame</u>, 45 N.Y.2d 402 (1978) and <u>Cuomo</u>, 64 N.Y.2d) (additional citations omitted).

As the case law amply demonstrates, the instant action confronts the Court with a nonjusticiable controversy which it is ill-equipped to adjudicate. In the lawful exercise of his duty to protect public health, and in accordance with federal guidance, the New York City Health Commissioner determined that to protect the public health against an existing threat, DOE staff and others in DOE schools and DOE buildings must be vaccinated against COVID-19. As the Commissioner's determination is rational, it may not be second-guessed by the plaintiffs or this Court without infringing on the separation of powers.

**5. Vaccination Mandates Are Constitutional**

Finally, courts have ruled time and again that compulsory vaccination is constitutional. <u>See</u> <u>Jacobson v. Commonwealth of Massachusetts</u>, 197 U.S. 11 (1905); <u>see</u> <u>also</u> <u>Phillips v. City of N.Y.</u>, 775 F.3d 538, 542-43 (2d Cir. 2015); <u>V.D. v. New York</u>, 403 F. Supp. 3d 76 (E.D.N.Y. 2019) (challenges to vaccination mandates for children to attend school upheld). Here, in connection with the DOE Vaccination Mandate, plaintiffs, via the Impact Arbitration

Decision, are receiving more due process than is required by the Constitution, and, as a result, their substantive due process claim is entirely unavailing, and would be subject to dismissal upon motion, if not *sua sponte*. See Marino v. Town of Branford, No. 17-CV-1828 (MPS), 2018 U.S. Dist. LEXIS 17285, at *45 (D. Conn. Feb. 2, 2018) (dismissing claim where the plaintiff did "not include any allegations or present any evidence suggesting that his medical certificate or license would be revoked or his employment terminated without the full due process hearing he requests").

Accordingly, because plaintiffs cannot establish any likelihood of success on their substantive due process claim, they are not entitled to a preliminary injunction.

### C. THE BALANCE OF EQUITIES DOES NOT TIP IN FAVOR OF PLAINTIFFS

Even if plaintiffs could prove irreparable harm and demonstrate a likelihood of success on the merits – which they cannot – they would, nonetheless, be unable to prove that the balance of hardship tips decidedly in their favor. Trump v. Deutsche Bank AG, 943 F.3d 627, 640 (2d Cir. 2019), rev'd on other grounds, __U.S.__, 140 S.Ct. 2019 (2020). To balance the equities in each case, courts must balance the competing claims of injury on each party of either granting or withholding the requested relief. Winter v. NRDC, Inc., 555 U.S. 7, at 24 (2008) (citing Amoco Production Co., 480 U.S. 531, 542 (1987)). In exercising their sound discretion, courts should pay particular regard to the public consequences in employing the extraordinary remedy of injunction. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

Here, the balance of equities clearly tips in the favor of defendants. In the midst of a public health crisis, in which 659,000 people have lost their lives in the United States alone, with 34,000 of those deaths in New York City, and countless others have become severely ill, plaintiffs have made the personal decision to decline a vaccination that has full FDA approval. In her own declaration, plaintiff Maniscalco sets forth that she is "concerned for [her] health, as

well as the health of [her] future children, given the newness of the vaccine, which does not have years of data to support its safety," and she says that she "understand[s] [the COVID-19 vaccine] to be a different kind of vaccine, using mRNA rather than actual virus particles as used in a typical, established vaccine." To be clear, Ms. Maniscalco proffers this public declaration, in service of a thin lawsuit that seeks to upend a validated public safety measure intended to protect, among others, the health of children. While Ms. Maniscalco, who is not a health professional, may prefer her own layperson opinion over that of countless scientists, doctors, government agencies, and regulators, she cannot foist that view on others, certainly not to impede considered public policy during a pandemic, by soliciting the Court to enjoin the DOE Vaccination Mandate, and thereby jeopardize the health and safety of school children based on her personal view.

Against this, defendants present the compelling – indeed, overwhelming – public interest in limiting the spread of COVID-19 in schools for the safety of children, other school employees, and the community at large. Moreover, mandating vaccination for pedagogues supports, if not ensures, that in-person schooling may continue, uninterrupted, for as many children as possible. This is a critical juncture for requiring vaccination against COVID-19. In the United States, in localities where the school year began six weeks ago, in early August, we have now seen distressing and corresponding increases in pediatric COVID-19 cases in states with low vaccination rates.[5] The American Academy of Pediatrics reported that, in the two

---

[5] See Minicucci Decl. Exhs. D and E, also available at: https://www.wsj.com/articles/child-covid-19-cases-rise-in-states-where-schools-opened-earliest-11630834201 and https://www.usnews.com/news/health-news/articles/2021-09-03/covid-cases-rise-sharply-among-kids-as-school-year-starts, last viewed on September 14, 2021.

weeks preceding September 9, 2021, the number of children who tested positive for COVID-19 has increased "exponentially," with nearly 500,000 pediatric cases being reported.[6]

Here, any purported abstract harm to plaintiffs or their putative class that could result from receiving the COVID-19 vaccine, or refusing to get the vaccine despite not having an exemption, does not *decidedly* outweigh the defendants' interest in limiting the spread of COVID-19 to unvaccinated children and their families. See Trump, 943 F.3d at 674 ("Even if the balance of these hardships/equities tips in favor of Appellants, which is debatable, it does not do so 'decidedly'") (citations omitted). Therefore, plaintiffs' motion must be denied.

### D.    AN INJUNCTION IS NOT IN THE PUBLIC INTEREST

Courts must also consider whether the granting of the requested relief contravenes the public interest. Brown & Williamson Tobacco Corp. v. Engman, 527 F.2d 1115 (2d Cir. 1975). The Supreme Court has recognized that stemming the spread of COVID-19 is a compelling public interest. Roman Catholic Diocese v. Cuomo, 141 S. Ct. 63, 67 (2020). The CDC has also recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume] full operations... [and] is the leading public health prevention strategy to end the COVID-19 pandemic." See Minicucci Exh. B at p. 1. Nevertheless, plaintiffs ask this court to grant the injunction to preserve their private interest in continuing to receive salary and benefits from the DOE and choosing not to be vaccinated, while ignoring the public interest in mandating vaccination against COVID-19 to reduce its spread. Plaintiffs thus elect to place their own salary, benefits, and personal views about vaccination in the public interest and, therefore, deserving of protection. Such vainglorious prioritization maliciously ignores a central tenet of the COH Order

---

[6]   See Minicucci Decl. Exh. F, also available at: https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/children-and-covid-19-state-level-data-report/, lasted viewed on September 14, 2021.

and the DOE Vaccination Mandate. It is the health and safety of the children who will be in teachers' care, and the broader goals of stemming the illness and death that continue to result from the spread of COVID-19, that is in the public interest. If granted, an injunction would altogether vitiate that public interest, by permitting unvaccinated teachers and school staff to possibly endanger, through the unchecked spread of COVID-19, the very children they are charged with educating and further promote the spread of a particularly virulent strain of the virus.

Teachers and paraprofessionals like plaintiffs who decline to be vaccinated are afforded the framework set forth in the Impact Arbitration Decision. DOE students, and their families, deserve a learning environment as safe from the harms of COVID-19 as can possibly be provided. There can be no question as to the public interest that should, and indeed must, be safeguarded here.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for a preliminary injunction should

be denied.

Dated:      New York, New York
            September 16, 2021



                              GEORGIA M. PESTANA
                              Corporation Counsel of the
                              City of New York
                              Attorney for Defendants
                              100 Church Street
                              New York, New York 10007
                              212-356-2078
                              lminicuc@law.nyc.gov



                      By:     *Lora Minicucci*
                              _____
                              Amanda C. Croushore / Lora Minicucci
                              Assistant Corporation Counsels