UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RACHEL MANISCALCO, EVELYN
ARANCIO, DIANA SALOMON and
CORINNE LYNCH, individually and for all
others similarly situated,

                Plaintiffs,

            - against -

THE NEW YORK CITY DEPARTMENT
OF EDUCATION, MEISHA PORTER,
Schools Chancellor of the New York City
Department of Education, in her official
capacity, THE CITY OF NEW YORK, BILL
DE BLASIO, Mayor of New York City, in
his official capacity, DEPARTMENT OF
HEALTH AND MENTAL HYGIENE, and
DAVE CHOKSHI, Commissioner of the
Department of Health and Mental Hygiene,
in his official capacity,

                Defendants.
----------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**

21-cv-5055 (BMC)

**COGAN**, District Judge.

      Defendants are city entities and officials responsible for enacting and enforcing an Order mandating vaccination for New York City Department of Education ("DOE") employees as well as employees and contractors who work in-person in DOE school settings or buildings. Plaintiffs, a group of such employees, seek a preliminary injunction enjoining defendants from enforcing the Order. Plaintiffs claim that the Order violates their substantive due process and equal protection rights under the Fourteenth Amendment of the United States Constitution. Additionally, plaintiffs allege that the Order is an arbitrary and capricious action, made in violation of lawful procedure, under N.Y. C.P.L.R. § 7803(3). Because plaintiffs have not

shown a likelihood of success on the merits, and for the other reasons set forth below, plaintiffs' motion for a preliminary injunction is denied.

## BACKGROUND

I. Factual Background

In August 2021, the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH") issued an Order requiring that all DOE staff, City employees, contractors who "work in-person in a DOE school setting or DOE building", and "[a]ll employees of any school serving students up to grade 12 and any UPK-3 or UPK-4 program that is located in a DOE building who work in-person, and all contractors hired by such schools or programs to work in-person" ("DOE employees") submit proof of at least one dose of vaccination for COVID-19 by September 27, 2021. The Order does not permit DOE employees to undergo weekly testing in lieu of vaccination, although DOHMH orders applicable to other City employees allow such an opt-out.

On September 15, 2021, the DOHMH rescinded and restated its prior Order. The updated Order provides clarity on a few issues, including its application to both charter schools and certain categories of visitors. Additionally, it states that "[n]othing in this Order shall be construed to prohibit any reasonable accommodations otherwise."[1]

II. Procedural Background

Plaintiffs are teachers and paraprofessionals employed by the DOE who bring suit challenging the Order on behalf of themselves and similarly situated DOE employees. Plaintiffs assert a variety of reasons for not wishing to be vaccinated, including concern over the long-term

---

[1] The September 15, 2021 update to the Order was likely made in response to the New York Supreme Court's Order temporarily restraining the DOHMH's vaccine mandate. New York City Municipal Labor Comm., et al. v. City of New York, et al., Index No. 158368/2021, Dkt No. 17 (Sup. Ct. N.Y. Cnty. Sep. 14, 2021) (order granting temporary restraining order). That court has since denied injunctive relief *pendente lite*.

effects of a newly developed vaccine. A subclass of plaintiffs allege that they have developed antibodies and therefore should not be required to be vaccinated on that basis.

Plaintiffs bring three claims. First, they maintain that the Order violates their right to substantive due process under the Due Process Clause of the Fourteenth Amendment. Specifically, plaintiffs allege that the Order interferes with their right to pursue their chosen profession and that they stand to lose their "health benefits, their jobs, or their seniority" if the mandate is enforced. Second, plaintiffs maintain that the Order violates the Equal Protection Clause of the Fourteenth Amendment, as it is based on a distinction between DOE employees and other municipal employees who may opt out of the vaccine mandate through weekly testing. Third, plaintiffs ask that the Court vacate the Order pursuant to N.Y. C.P.L.R. § 7803(3).

## DISCUSSION

In this Circuit, "[a] party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." Am. C.L. Union v. Clapper, 804 F.3d 617, 622 (2d Cir. 2015) (quotations and citations omitted). "In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." Ferreyra v. Decker, 456 F. Supp. 3d 538, 549 (S.D.N.Y. 2020); see also Statharos v. New York City Taxi & Limousine Comm'n, 198 F.3d 317, 322 (2d Cir. 1999). Because plaintiffs allege that their substantive due process rights have been violated, "no further showing of irreparable injury is necessary." Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984). Therefore, I will focus my analysis on the other factors, namely the likelihood of success on the merits.

I.  **Plaintiffs' Substantive Due Process Claim**

   a. Likelihood of Success on the Merits

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." Southerland v. City of New York, 680 F.3d 127, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). To analyze a claim under substantive due process, courts perform a two-step analysis. Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021).

"The first step in substantive due process analysis is to identify the constitutional right at stake." Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995). Not all rights are entitled to protection. Only rights that are fundamental or implicit in the concept of ordered liberty are accorded protection under substantive due process. See generally Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997); Hurd, 984 F.3d at 1088.

Plaintiffs assert that the Order deprives them of their "right to pursue their profession."[2] The Supreme Court "has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment." Conn v. Gabbert, 526 U.S. 286, 291-92 (1999). This right is "subject to reasonable government regulation." Id. at 92; see, e.g., Dent v. West Virginia, 129 U.S. 114 (1889) (upholding a requirement of licensing before a person can practice medicine). To "rise to the level of a violation of the Fourteenth Amendment's liberty right to choose and follow one's calling," government regulation must result in more than a "brief interruption." Id. "Instead, the

---

[2] Plaintiffs focus their arguments here on the teaching profession specifically. However, many of the 148,000 persons subject to the Order are paraprofessionals.

4

Supreme Court, [the Second] Circuit, and the other Circuits addressing the issue have all indicated that the right of occupational choice is afforded Due Process protection only when a plaintiff is completely prohibited from engaging in his or her chosen profession." Hu v. City of New York, 927 F.3d 81, 102 (2d Cir. 2019) (quotations and citations omitted). Courts in this Circuit have held that unless the defendants denied plaintiff "all opportunities to practice" in a chosen profession, then there was no substantive due process violation, even if the defendants' "actions made it more difficult" to do so. Marino v. City Univ. of New York, 18 F. Supp. 3d 320, 340 (E.D.N.Y. 2014).[3]

Here, the Order may ultimately disqualify plaintiffs from employment in their positions at public schools in New York City, but "the Due Process Clause secures the liberty to pursue a calling or occupation, and not the right to a specific job." Parsons v. Pond, 126 F. Supp. 2d 205, 207 (D. Conn. 2000) (citations and quotations omitted). Plaintiffs' contention that they may not find alternative means of pursuing their profession as appealing or convenient for a variety of reasons is well taken. However, although defendants may render it more difficult for them to pursue their calling, plaintiffs are not absolutely being barred from doing so. For example, plaintiffs may pursue teaching or paraprofessional jobs at private schools in New York City, public and private schools outside of New York City, daycares or early childhood education centers, tutoring centers, adult or continuing education centers, virtual institutions, or within home settings. Therefore, plaintiffs are not being denied their fundamental right to pursue their profession.

---

[3] Citing Valmonte v. Bane, 18 F. 3d 992, 1001 (2d Cir. 1994), plaintiffs claim in their reply briefing that "[a] violation of one's fundamental right to pursue an occupation exists and gives rise to a due process claim where there is less than a complete inability to practice one's profession." However, plaintiffs' characterization of the claim at issue in that case is incorrect. That case analyzed the litigant's right under procedural due process, not substantive due process.

Further, any property right to employment that plaintiffs may claim does not rise to the level of a fundamental right protected by substantive due process. Generally, property interests related to employment are not among protected fundamental rights, nor are "simple, state-law contractual rights, without more." Walker v. City of Waterbury, 361 F. App'x 163, 165 (2d Cir. 2010) (summary order) (quotations omitted). Neither is there a fundamental right to continued public employment. Martin v. Town of Brattleboro, No. 07-cv-260, 2008 WL 4416283, at *2 (D. Vt. Sept. 24, 2008) (noting that "most Circuit Courts of Appeal have declined to find that a right to continued public employment is a fundamental property interest entitled to substantive due process protection").

Even if I agreed that plaintiffs' rights to pursue their profession or to continued employment were fundamental rights, plaintiffs' arguments still fail at the second step of the analysis. Here, plaintiffs "must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" such that the Due Process Clause "would not countenance it even were it accompanied by full procedural protection." Hurd, 984 F.3d at 1087 (internal quotation marks and citation omitted). Plaintiffs cannot meet that burden.

In Jacobson v. Massachusetts, 197 U.S. 11, 26-27 (1905), the Supreme Court held that a vaccine mandate enacted by state of Massachusetts without any exceptions for adults – including for medical or religious reasons – was constitutional, and not a deprivation of any right secured by the U.S. Constitution. Applying "Jacobson, the state may curtail constitutional rights in response to a society-threatening epidemic so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" Columbus Ale House, Inc. v. Cuomo, 495

6

F. Supp. 3d 88, 92 (quoting Jacobson, 197 U.S. at 38).  Requiring that DOE employees take a dose of ivermectin as a condition of employment might qualify as "a plain, palpable invasion" of such rights, not having any real relation to the public health crisis.  However, mandating a vaccine approved by the FDA does not.

Ultimately, even if plaintiffs disagree with it, the Order at issue represents a rational policy decision surrounding how best to protect children during a global pandemic.  Although plaintiffs argue that there are other proven means of preventing the spread of COVID-19 in schools, among them frequent testing and mask wearing, it is not shocking for the City to conclude that vaccination is the best way to do so, particularly at a time when viral transmission rates are high.  To support this proposition, defendants note that the CDC has recommended vaccination of schoolteachers and staff "as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations. . . [and] is the leading public health prevention strategy to end the COVID-19 pandemic."  Further, defendants point to the recent exponential increase in pediatric cases since schools have resumed elsewhere in the country where vaccination rates among those eligible are low.[4]

   b. Balance of Equities and the Public Interest

As I find plaintiffs' arguments unavailing on the likelihood of success on the merits, I will only briefly address the remaining two factors.  There is no doubt that DOE employees who refuse vaccination may be harmed by the mandate.  Plaintiffs may face difficulty finding another job while the school year is already underway due to the cyclical nature of hiring at schools.  Yet

---

[4] See e.g., Yoree Koh, Where Schools Opened Earliest, WALL ST. J. (Sept. 5, 2021), https://www.wsj.com/articles/child-covid-19-cases-rise-in-states-where-schools-opened-earliest11630834201; Ernie Mundell & Robin Foster, Covid Cases Rise Sharply Among Kids as School Year Starts, U.S. NEWS AND WORLD REPORT (Sept. 3, 2021), https://www.usnews.com/news/health-news/articles/2021-09-03/covid-cases-rise-sharplyamong-kids-as-school-year-starts.

7

"courts must balance the competing claims of injury on each party of either granting or withholding the requested relief, paying particular regard to the public consequences." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7 (2008). Reasonable minds may disagree on what these public consequences are. However, "where good faith arguments can be made on both sides of the many issues raised by the pandemic," it is up to local government, "not the courts, to balance the competing public health and business interests." Columbus Ale House, 495 F. Supp. 3d at 95.

As the pandemic is now well into its second year, all are more than familiar with the severity of COVID-19 from a public health perspective. Since its emergence, COVID-19 has killed over 4.5 million people worldwide, with over 670,000 of those deaths taking place in the United States.[5]

Unlike the first several uncertain months after COVID-19's discovery, state and local officials have since acquired more knowledge and equipped themselves with better tools to reduce viral transmission. Of these new tools, one of the most highly regarded is vaccination. The Food and Drug Administration approved the Pfizer-BioNTech vaccine for individuals 16 years of age and older, after reviewing data that supported the conclusion that the vaccine was both safe and effective.[6] Two additional vaccines, including a traditional viral vector vaccine developed by Johnson & Johnson, have been made available under FDA emergency use authorization, as has the Pfizer-BioNTech vaccine for individuals 12 through 15 years of age. In

---

[5] WHO Coronavirus (COVID-19) Dashboard, WORLD HEALTH ORGANIZATION (updated Sept. 23, 2021), https://covid19.who.int/.

[6] FDA Approves First COVID-19 Vaccine, FDA.GOV (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.

the United States alone, over 380 million doses of all three vaccines have been administered.[7]

There is evidence that vaccines provide more robust protection than antibodies from a previous

COVID-19 infection[8] and to reduce the potential for hospitalization as compared to the

unvaccinated population.[9]

In denying plaintiffs' motion, this Court is not impugning either the integrity or the validity of plaintiffs' concerns. No one will get the last laugh if it turns out that 10 or 20 years from now, plaintiffs' fear of long-term deleterious effects from the vaccination proves to have been well-founded. The Court acknowledges their argument that there simply hasn't been enough time to generate long-term data. However, the Court cannot reasonably conclude that the defendants' arguments in favor of vaccination were not made in good faith, or that they are irrational. Substantive due process therefore requires the Court to afford deference to defendants' weighing of the competing concerns.

## II.     Plaintiffs' Equal Protection Claim

Plaintiffs' equal protection claim fails for the same reason as their substantive due process claim. Unless a statute or state action provokes "strict judicial scrutiny because it interferes with a fundamental right or discriminates against a suspect class, it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to

---

[7] Tracking Coronavirus Vaccinations Around the World, N.Y. TIMES (updated Sep. 23, 2021), https://www.nytimes.com/interactive/2021/world/covid-vaccinations-tracker.html.

[8] Alyson M. Cavanaugh et al., Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination — Kentucky, May–June 2021, 70 MMWR MORBITY MORTAL WEEKLY REP., 1081-3 http://dx.doi.org/10.15585/mmwr.mm7032e1.

[9] Eli S. Rosenberg et al., New COVID-19 Cases and Hospitalizations Among Adults, by Vaccination Status — New York, May 3–July 25, 2021, 70 MMWR MORBITY MORTAL WEEKLY REP., 1306-11 http://dx.doi.org/10.15585/mmwr.mm7037a7.

9

a legitimate governmental purpose." Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 457-58 (1988) (citations and quotations omitted).

Plaintiffs concede that they do not purport to be identify a "legally protected class" here. And, as I explained above, no fundamental right is implicated. Therefore, we will review the Order under rational basis review. Under such review, a court will uphold the state action "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that" the actions "were irrational." Id. at 462-3 (citations and quotations omitted). This heavy burden is on the challenger. Id.

To prevail, plaintiffs must demonstrate that there is no rational basis for the difference in treatment between them and other municipal employees. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). They have not done so. Although permitting opt-out testing may be appropriate for other municipal employees, defendants are not unreasonable in requiring vaccination of DOE employees without such an opt-out. Unlike other municipal employees, these DOE employees are necessarily in close contact for long hours with children below twelve – who cannot be vaccinated – in indoor, congregate settings. Social distancing, mask wearing, and testing may be sufficient to protect other municipal employees in different contexts, particularly because at least a portion of these employees are vaccinated.

It is not irrational to conclude that such measures would not adequately protect unvaccinated children in a school setting, especially as some of these children will have preexisting conditions that make them especially vulnerable. And, as mentioned above, there is also scientific evidence suggesting that any protection afforded by antibodies may not be as

strong as that of vaccination. The Court neither accepts nor rejects that evidence; it is sufficient to note that its existence lends rationality to defendants' decision.

Further, if defendants are correct and vaccination does in fact reduce COVID-19 infections in schools, then a vaccine mandate would minimize the need for both students and teachers to miss class due to either infection or quarantine. Public school students have already endured two school years that were mired by disruption, leaving many students far behind. Minimizing interruption by providing a safe environment for these students is also a legitimate and important governmental purpose. Although plaintiffs argue that masks and testing adequately can advance this objective, it is not irrational for defendants to conclude the vaccine mandate better enhances this purpose.

III. Plaintiffs' Article 78 Claim

Plaintiffs also seeks an injunction under its state law claim pursuant to N.Y. C.P.L.R. Article 78. However, CPLR 78 is principally a state law procedural remedy. Federal courts have routinely declined to exercise supplemental jurisdiction over Article 78 claims pursuant to 28 U.S.C. § 1367(c), citing the special solicitude afforded to this "purely state procedural remedy." Camacho v. Brandon, 56 F. Supp. 2d 370, 380 (S.D.N.Y. 1999); see also Birmingham v. Ogden, 70 F. Supp. 2d 353, 372 (S.D.N.Y. 1999) ("[F]ederal courts are loath to exercise jurisdiction over Article 78 claims."); Herrmann v. Brooklyn Law School, 432 F. Supp. 236, 240 (E.D.N.Y. 1976) ("[T]his special proceeding designed to accommodate to the state court system is best suited to that system.").

Further, as the issues in this case are also currently and properly before the New York Supreme Court in an ongoing Article 78 proceeding, the reasons for denying supplemental jurisdiction are especially compelling. See New York City Municipal Labor Comm., et al. v.

City of New York, et al., Index No. 158368/2021 (Sup. Ct. N.Y. Cnty. Sep. 2021); see also Kent v. New York, No. 11-cv-1533, 2012 WL 6024998, at *11 (N.D.N.Y. Dec. 4, 2012) ("[T]his Court declines to exercise supplemental jurisdiction over plaintiffs' Article 78 claim because to do so would require this Court to interpret state law before the New York State courts have an opportunity to analyze and resolve the issues."). Because I decline to exercise supplemental jurisdiction over plaintiff's Article 78 claim, it cannot provide a basis for plaintiffs' preliminary injunction.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       September 23, 2021